UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Y. STROHL,

                    Plaintiff,                                    MEMORANDUM
     -against-                                          AND ORDER

BRITE ADVENTURE CENTER, INC., a/k/a              08 CV 259 (RML)
BRIGHT BEGINNINGS PRE-SCHOOL, and
ADVENTURELAND CHILD CARE CENTER,
INC.,
                    Defendants.
-------------------------------------------------------------X

LEVY, United States Magistrate Judge:

          This action is before me on the consent of the parties pursuant to 28 U.S.C. §

636(c).  It arises out of the termination of Yajaira Strohl ("plaintiff") from her job as a teacher's

assistant with defendant Brite Adventure Center, Inc. a/k/a Bright Beginnings Pre-School

("Brite").  In her Amended Complaint, plaintiff alleges that Brite and defendant Adventureland

Child Care Center, Inc. ("Adventureland") (collectively, "defendants") (1) fired her in violation

of the Family and Medical Leave Act of 1993 ("FMLA") (Amended Complaint, filed July 23,

2008 ("Am. Compl."), ¶¶ 13-17), (2) violated the New York City Human Rights Law

("NYCHRL") by not reasonably accommodating her disability (Am. Compl. ¶¶ 18-20), and (3)

failed to pay her promptly for all hours worked, in violation of New York Labor Law sections

191 and 193 (Am. Compl. ¶¶ 21-23).  I previously granted defendants summary judgment on the

New York Labor Law section 193 claim.  (Order, dated Aug. 28, 2009 ("Summary Judgment

Order").)

          I held a bench trial on January 13 and 14, 2010, at which seven witnesses

testified: plaintiff; Sylvia Soler ("Soler"), a former Brite teacher; Glenn Schroter, the defendants'

Chief Operating Officer; Norma Perez Gonzalez ("Gonzalez"), a teacher at Brite; Annette

Schroter, the Executive Educational Director of Brite and a one-third owner of Adventureland;

Joan Lawless, the sole owner of Brite and a one-third owner of Adventureland; and Nancy Picart

("Picart"), formerly the site director of the school where plaintiff worked.  For the reasons stated

below, I find in favor of defendants on the FMLA and NYCHRL claims, and I find in favor of

plaintiff on the New York Labor Law claim in the amount of $607.00 plus fees and costs.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I will consider each of plaintiff's causes of action in turn.

**I.       FMLA**

Plaintiff was a teacher's assistant who worked with toddlers at Brite.  (<u>See, e.g.</u>,

Trial Transcript ("Tr."), at 52, 237.)  In addition to working directly with the children, her daily

responsibilities included helping the head teachers set up the classroom, ensuring that the

necessary supplies were available, and keeping the tables, floor, and bathroom clean.  (<u>See, e.g.</u>,

Ex. A (Employee Handbook, dated June 8, 2005), at 5-6; Tr. at 240.)  Defendants do not take

issue with plaintiff's performance; indeed, her site director, Picart, described her as "very

attentive to the children" and stated that "she really seemed to care a lot about them."  (Tr. at

237.)  Rather, the threshold dispute is jurisdictional and centers on the hours plaintiff worked in

this position in the twelve months prior to January 23, 2007.

The FMLA covers only employees who worked for their employer "for at least

1,250 hours of service . . . during the previous 12-month period."  29 U.S.C. § 2611(2)(A)(ii).

As discussed in the Summary Judgment Order, plaintiff's timesheets for the twelve months

preceding her termination credit her for 1174.75 hours, or 75.25 hours too few.  (<u>See</u> Summary

Judgment Order at 14.)  Plaintiff alleges, however, that she performed well over 75.25 hours of

uncompensated work in that year, by (1) routinely beginning work duties before the official start time of classes, (2) occasionally covering for coworkers during her lunch break or after hours, and (3) typing child observation records at home.  (See, e.g., Plaintiff's Post-Trial Memorandum, dated Feb. 16, 2010 ("Pl.'s Mem."), at 3-5.)  After summarizing the relevant law, I will consider each of these allegations.

Under the FMLA, "the legal standards established under" Section 7 of the Fair Labor Standards Act ("FLSA") govern "whether an employee meets the hours of service requirement."  29 U.S.C. § 2611(2)(C); accord Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 720 (2d Cir. 2001).  In particular,

> an employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer "knows or has reason to believe that [the employee] is continuing to work" and that work was "suffered or permitted" by the employer.

Kosakow, 274 F.3d at 718 (citing 29 C.F.R. § 785.11) (alteration in original); see also Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008) ("An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance.  This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." (citations omitted)).

To make out a prima facie case, "an employee [must] prove[] that he has in fact performed work for which he was improperly compensated and produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946).

It then falls upon the employer to rebut the employee's prima facie
case by providing evidence of the precise amount of work
performed or evidence to negative the reasonableness of the
inference to be drawn from the employee's evidence, and if the
employer fails to do so the court may then award damages to the
employees, even though the result be only approximate.

Harold Levinson Assocs. v. Chao, 37 F. App'x 19, 21 (2d Cir. 2002) (internal quotation marks,

citations, and brackets omitted).

### 1.      Plaintiff's Start Time

According to defendants, plaintiff's working day began at 8:00 each morning.

(E.g., Tr. at 199, 221, 227.)  Plaintiff contends that while her official start time was 8:00, in

reality she was required to be at work earlier.  (See Pl.'s Mem. at 4.)  She explained that her

work-related tasks before 8:00 included "setting the classes up" and "[s]ometimes . . . working in

another class with other children watching the children."  (Tr. at 103).

The Second Circuit considered a similar factual scenario, in the context of an

employer's motion for summary judgment, in Kosakow v. New Rochelle Radiology Associates,

P.C., 274 F.3d 706 (2d Cir. 2001).  The plaintiff in that case was a radiological technologist who

claimed that although her shift officially began at 8:00 a.m., she had to arrive by 7:45 because

the defendant employer "was open to accept walk-in patients at 8:00 a.m., and the office policy

was to be ready to serve those patients when they arrived."  Id. at 715.  She alleged that "[i]n

order to accomplish this, [she] needed to turn on the x-ray processing machine, allow it to warm

up, perform tests on the machine, and help to prepare the office for receiving patients by pulling

client files and preparing and performing pre-testing procedures for certain tests."  Id.  The

Second Circuit held that "the duties she describes were necessary for the proper performance of

her job" and would therefore be compensable.  Id. at 718.  This would be so even if the

employees "were never expressly 'required' to arrive prior to 8:00 a.m. by their supervisors," id., "so long as the employer 'knows or has reason to believe that [the employee] is continuing to work' and that work was 'suffered or permitted' by the employer," id. (quoting 29 C.F.R. § 785.11) (alteration in original). Similarly here, if plaintiff could establish that she either was required to begin work before 8:00 a.m. or that her employer knew, or had reason to believe, that she was performing necessary work before 8:00 a.m., she would be entitled to credit for relevant work performed before her official start time.

As for her allegation that school policy required her to arrive before 8:00, plaintiff testified variously that her unofficial required start time was 7:45 a.m. (see, e.g., Tr. at 8, 82-84, 86) or an indeterminate period of a few minutes before 8:00 (see, e.g., id. at 93-94, 102-04). Although she insisted that "I can prove that, I have copies of my policy" (Tr. at 93; see also id. at 94, 102), the policy handbook she placed into evidence is silent on early arrivals (see Ex. A).

Three defense witnesses also gave testimony about the start-time policy. Annette Schroter testified that plaintiff's "schedule was 8:00 to 4:00" (Tr. at 221), but explained that "[t]he policy is that you need to be there several minutes before the start time, couple of minutes before" (id. at 226) and that "if the start time is 8:00, [parents] want to be in at 8:00. If you're showing up exactly at 8:00, you're punching in and then going outside, you're a couple of minutes late, and we really need to be on time" (id. at 227). Gonzalez, plaintiff's classroom teacher, stated that "8:00 was [plaintiff's] schedule[d]" start time and that "[w]hen she punches in, she starts taking down the chairs and setting up her class, the classroom." (Id. at 199.) Picart, the site director, confirmed that plaintiff's start time was 8:00 a.m. and stated that plaintiff had no "lesson plans that she had to do prior to class starting." (Tr. at 242.)

As for the times when plaintiff actually arrived at work, her time sheets indicate punch-in times ranging from before 7:30 to well after 8:00. (Ex. O.) On cross-examination, plaintiff's testimony about her punch-in time was inconsistent. For example, she stated that she was late to work on dates when she punched in at 7:52, 7:54, or 7:57 (Tr. at 89-91), but that she was early on two dates when she punched in at 7:56 (Tr. at 104). In addition, a document that appears to be part of an application by plaintiff for unemployment benefits states that plaintiff's hours of work were "8am-4pm." (Ex. S at 2.)[1]

I find that on the days when she punched in before 8:00, plaintiff should have been credited for the time it took her to get from the punch clock to the classroom and for preparatory activities she performed in the classroom. In total, I find that she should have been credited for an average of ten minutes per morning.

Those ten minutes are perhaps de minimis. "When the matter in issue concerns only a few . . . minutes of work beyond the scheduled working hours, such trifles may be disregarded." Anderson, 328 U.S. at 692. The Second Circuit has instructed that

> three factors should be examined to assess whether otherwise compensable time should be considered de minimis, and therefore not compensable: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether "the claimants performed the work on a regular basis."

Reich v. N.Y. City Transit Auth., 45 F.3d 646, 652 (2d Cir. 1995) (quoting Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984)). The first factor weighs in plaintiff's favor, because

---

[1] Although this document is unsigned, and although at trial plaintiff disavowed any knowledge of the document (see Tr. at 85-86), it contains a detailed, first-person account of the end of plaintiff's employment.

it would not be difficult for her employer to account for her on-site work activities.  The second

factor weighs in the employer's favor, because the amount of time involved would total only

about four hours per month.  Cf. Singh v. City of N.Y., 524 F.3d 361, 371 (2d Cir. 2008)

(Sotomayor, J.) ("[T]he aggregate claims are quite small, generally amounting to only a few

minutes on occasional days." (footnote omitted)); Haight v. Wackenhut Corp., 692 F. Supp. 2d

339, 345 (S.D.N.Y. 2010) (characterizing seven minutes per day as "an insignificant amount of

time").  The third factor weighs in plaintiff's favor insofar as she was supposed to be punched in

and ready to receive students by 8:00 every day, but it weighs against her insofar as she arrived

late to work on more than a few mornings (see Ex. O passim).  Cf. Kosaskow, 274 F.3d at 719

(implying that early arrivals might not be "on a regular basis" if the employee did not, as she

claimed, arrive early every day).

   However, it is not necessary here to decide whether ten minutes per day, i.e. fifty

minutes per week, is de minimis.  In her final twelve months of employment, plaintiff did not

work at all during a twelve-week summer vacation (see Ex. O at 12-13, 321-22) or a one-week

winter vacation (see id. at 19-20, 329).  In total, then, she worked thirty-nine weeks during those

twelve months.[2]  She therefore should have been credited for 32.5 additional hours for her early-

morning work over the course of the year.  For the reasons set forth infra, that amount of time

will not carry her across the 1250-hour threshold.

### 2. Work During Lunch or After Hours

   Plaintiff alleges that she performed a variety of work-related tasks after punching

---

   [2] The record does not make entirely clear how or whether plaintiff was compensated for holiday, personal, or sick days, and I will not further reduce the number of weeks for which she deserves compensation to account for such isolated days.

out for lunch or at the end of the day, such as cleaning the bathroom, supervising children whose

parents were late to pick them up, or covering for other teachers. (See Tr. at 10, 16, 20.) She

estimated that she performed such off-the-clock work three times per week, for ten to fifteen

minutes each time, i.e., for thirty to forty-five minutes per week. (Id. at 14.) She testified that on

at least some of these occasions, she did off-the-clock work at the request of Picart. (See id. at

16-17.) Soler's testimony confirmed plaintiff's account (see id. at 128-29), and Gonzalez

disclaimed knowledge of whether plaintiff ever worked during lunch or after hours (id. at 200).

Picart denied that plaintiff ever worked while punched out. (Id. at 240-42.)

I find that plaintiff has made out her prima facie case, and defendants have failed

to rebut it. I further find that the amount of time in question is not de minimis. Cf. Kosakow,

274 F.3d at 719. Plaintiff's estimate of the time she spent on such work is reasonable, even

though approximate. Using numbers toward the high end of plaintiff's range of estimates, I find

that her employer undercounted her lunchtime and late-afternoon hours by a total of twenty-six

hours over the relevant thirty-nine-week period.

### 3. Child Observation Records

As part of her job duties, plaintiff periodically wrote child observation records

("records"), which summarize an activity (such as painting or building with blocks) performed

by an individual child and list skills associated with the activity. (See Ex. 21 (sample child

observation records); see also Tr. at 201.) Plaintiff testified that she had to complete records

"every two weeks" (Tr. at 9; accord id. at 128 (testimony of Soler)), while Annette Schroter

testified that only two per child per year were required (id. at 220). Plaintiff stated that she spent

six and one half hours every two weeks completing the records at home, off the clock (id. at 10),

and that she sometimes completed them at school after hours or during her lunch break (id. at 15).  It is plain that plaintiff's records were typed on a computer.  (See Ex. 21.)

Plaintiff further testified that she would give the records to one of the head teachers, including Soler and Gonzalez, and that the head teachers would then give the records to Picart.  (Tr. at 15, 26-27; see also id. at 128 (Soler testifying that the teachers would show completed records to Picart).)  At trial, Picart testified that she did not instruct plaintiff to fill out records or to take work home; that she did not know of any work plaintiff did at home; and, when shown a record that was prepared on a computer, that she was "not familiar with this form."  (Tr. at 241.)  Annette Schroter testified that she neither required plaintiff to complete the records at home nor knew that plaintiff did so.  (Tr. at 220-21.)

"Work performed off-site must be counted as time worked only 'if the employer knows or has reason to believe that work is being performed.'"  Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998) (quoting 29 C.F.R. § 785.12).  "An employer need not have actual knowledge of such off-site work; constructive knowledge will suffice."  Id.  I find that plaintiff has shown by a preponderance of the evidence that she gave her records to the head teachers.  I do not find, however, that plaintiff has shown by a preponderance of the evidence that anyone apart from the head teachers knew or had reason to know that plaintiff typed her records off-site.

"To be held liable under the FLSA, a person must be an 'employer.'"  Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999) (quoting 29 U.S.C. § 203(d)).  In analyzing "whether a given individual is or is not an employer. . . . the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the

economic reality presented by the facts of each case." Id. (internal quotation marks and citations omitted). "Under the economic reality test, the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (internal quotation marks and citations omitted). Although Gonzalez had some scheduling responsibilities (see, e.g., Tr. at 203, 208; see also id. at 223 (Annette Schroter testifying that Gonzalez "is in charge of the universal Pre-K program if the site director is not on site")), I find that the head teachers do not otherwise satisfy any of these factors and were not "employers" of assistant teachers such as plaintiff. (See, e.g., id. at 221-22 (Annette Schroter testifying that scheduling was the responsibility of Picart or her superiors); id. at 236 (Picart testifying that she "kept track of all attendance for the staff"); id. at 237 (Picart testifying that she was plaintiff's "supervisor" and that a teacher who wanted a day off would ask her). See generally Ex. A at 3-6 (providing very similar job descriptions for the two categories of teachers).) Accordingly, no "employer" of plaintiff had actual or constructive notice that she was performing work off-site, and defendants are not liable for any off-the-clock time plaintiff spent working on child observation records.

\*     \*     \*

For the reasons stated above, I find that plaintiff should be credited with no more than 58.5 hours in addition to the 1174.75 hours reflected on her timesheets. She would need a total of 75.25 additional hours to trigger FMLA coverage. Plaintiff's claim under the FMLA is therefore denied.

**II.     New York City Human Rights Law**

Under the NYCHRL, an employer must "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer]." N.Y.C. Admin. Code § 8-107(15).

> In order to set out a prima facie case of failure to accommodate, the employee bears the burden of demonstrating that: (1) he was an "individual who has a disability" within the meaning of the statute; (2) the employer had notice of his disability; (3) he could perform the essential functions of the job with reasonable accommodation; and (4) the employer refused to make such accommodation.

Roberts v. AIG Global Inv. Corp., No. 06 Civ. 5966, 2008 WL 4444004, at *5 (S.D.N.Y. Sept. 30, 2008) (Lynch, J.) (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000)). Caselaw under the Americans with Disabilities Act ("ADA") provides guidance in this analysis, because the ADA and the NYCHRL "are governed by the same analytical framework." Nader v. ABC TV, Inc., 150 F. App'x 54, 55 (2d Cir. 2005).

At trial, the parties vigorously debated whether defendants were on notice that plaintiff suffered from chronic migraine headaches. It is not necessary to resolve that question, however, because I find that plaintiff did not demonstrate that she informed her employer that she was requesting a day off on January 23, 2007 because of her migraine headaches. See, e.g., Thorner-Green v. N.Y. City Dep't of Corr., 207 F. Supp. 2d 11, 14-15 (E.D.N.Y. 2002) ("An employee cannot hold an employer liable for failing to provide an accommodation that the employee has not requested in the first place . . . .").

I make this finding after careful review of the record, because the evidence on this issue was conflicting and ultimately unclear. Plaintiff and the witnesses for defendants disagreed about the key facts, and there were no independent witnesses to offer a disinterested

perspective.[3]  The few contemporaneous documents offered at trial were ambiguous and failed to

establish that plaintiff had advised her employer she would need time off on January 23, 2007 to

seek treatment for migraines.

Plaintiff testified that she had specifically told Picart that she had two medical

appointments, one of which was for migraine headaches.  (Tr. at 31 ("I told her I had a

doctor's appointment, I had two and one of those was regarding my migraine.").)  Picart then

told plaintiff that she "had to give her a letter" (id.), but the letter plaintiff offered into evidence

makes no mention of migraine headaches.  It states simply: "I will be absent from work . . .

because I have a Doctor's appointment and another appointment."  (Ex. 7 (letter of Yajaira

Strohl, dated Jan. 2, 2007) (the "Jan. 2 letter").)  Testifying about the Jan. 2 letter, plaintiff

asserted that Picart knew "this was about a migraine headache issue" (Tr. at 34) but could

provide no corroboration.  Approximately two weeks later, plaintiff sent a letter to Annette

Schroter stating that "[i]t is important that I be off on January 23 because I have an appointment

with The Department of Homeland Security and two scheduled Doctor's appointments."  (Ex. 11

---

[3] Virtually all of the testimony at trial came from witnesses who appeared to have some
interest in the outcome, such as plaintiff and current employees and shareholders of the
defendant corporations.  In many respects, Nancy Picart—a former employee who was on
vacation of January 23, 2007 and had no discernible financial ties to defendants or animus
toward plaintiff—came closest to being a disinterested witness.  By contrast, the testimony of
Sylvia Soler, also a former employee, contained troubling contradictions (compare Tr. at 134
(Soler testifying that she had written one but not two letters to Annette Schroter regarding
plaintiff's termination), and Tr. at 136-37 (Soler calling it "ludicrous and absurd" to suggest that
she had written that plaintiff had told her "she had a very important appointment with a
company"), with Ex. G (two letters of Sylvia Soler to Annette Schroter), and Ex. G at 1 (quoting
plaintiff as saying "no one told Ms. Annette, I had a very important appt w/ a company etc."),
and Tr. at 139 (Soler calling her statements in the first letter mistaken and acknowledging that
she had written another letter)), and her statements seemed colored by resentment about Brite's
having fired her for lateness (see Tr. at 131-32).

(letter of Yajaira Strohl, dated Jan. 16, 2007) (the "Jan. 16 letter").)  Again, the Jan. 16 letter

does not mention migraine headaches.  Shortly after the events of January 23, 2007, plaintiff

faxed a letter to the New York State Department of Labor stating that she had told Annette

Schroter that "I have a Doctor's appointment tomorrow and that it was very important that I see

my doctor because I was not feeling well."  (Ex. F (letter of Yajaira Strohl, dated Jan. 23, 2007,

fax banner stamped Jan. 26, 2007); accord Ex. S at 2.)  There is no mention of migraines.

Picart and Annette Schroter offered a different account.  Picart testified that she

did not recall receiving the Jan. 2 letter[4] and stated that plaintiff never told her she needed the

day off for a doctor's appointment or that she was having migraine headaches at that time.  (Tr.

at 243-45.)  Annette Schroter testified that plaintiff told her she needed to miss work that day

because her husband was "having some stitches removed."  (Id. at 209.)  She denied ever

receiving the Jan. 16 letter.  (Id. at 215.)

Faced with two very different accounts of the events leading up to January 23,

2007, I cannot say that plaintiff's version is more convincing than defendants'.  As the law puts

the burden of persuasion on the plaintiff, I find that she has not proved by a preponderance of the

evidence that defendants knew or should have known that her request for a day off was

connected to her migraine headaches.  "[G]enerally, it is the responsibility of the individual with

a disability to inform the employer that an accommodation is needed."  Graves v. Finch Pruyn &

Co., 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks and citation omitted); see also

---

[4] The Jan. 2 letter bears a stamp with Brite's name, address, and telephone number.  (Ex. 7.)  Plaintiff testified that Picart stamped the letter and a copy when she gave it to her.  (Tr. at 32.)  At trial, defendants implied that plaintiff herself had stamped the letter at some later date. (See Tr. at 80-82, 238, 273-73.)  I find that dispute irrelevant, because my conclusion would be the same regardless of which account is correct.

Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999) ("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied."). If it had been obvious that plaintiff's request was connected to a disability, perhaps her employer would have had a duty to inquire further. See generally Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135-36 (2d Cir. 2008). But I find that even if, arguendo, defendants knew or should have known that plaintiff suffered from chronic migraine headaches, her request for a day off to attend an unspecified "doctor's appointment" did not make it obvious to defendants that plaintiff was requesting accommodation of a disability. Consequently, plaintiff has not shown that defendants refused to make a reasonable accommodation, and I find for defendant on her NYCHRL claim.

### III.    New York State Labor Law

Plaintiff also seeks lost wages, costs, and attorney's fees under New York Labor Law article 6. See generally Dragone v. Bob Bruno Excavating, Inc., 847 N.Y.S.2d 251, 252 (3d Dep't 2007) (holding that employees have a private right of action under Labor Law article 6).

As explained above, plaintiff has established that she worked for 26 uncompensated hours during her lunch break or after punching out for the day. In addition, the court is unaware of any de minimis exception under state law and so counts here the 32.5 hours of early-morning work. Accordingly, Brite owes plaintiff compensation for 58.5 hours of work. During the twelve-month period in question, plaintiff's salary was $10.30 per hour until mid-November 2006 and $10.75 per hour thereafter. (Compare Ex. S at 312, with id. at 327.) Although some degree of approximation is unavoidable as to both the hours and the pay rate, I find for plaintiff in the amount of $607.00 on her unpaid wages claim. See Padilla v. Manlapaz,

643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (holding that under New York law, the court may

award approximated damages when the employer failed to maintain accurate time records).

Labor Law section 198(1) permits the court to award "ordinary costs" to a

plaintiff who has prevailed on a wage claim, and section 198(1-a) requires the court to award

"reasonable attorney's fees" to such a plaintiff.[5]  Further briefing is required for the court to

determine the costs and fees to be awarded.  The court notes that (1) the fee award will cover

only that portion of plaintiff's counsel's work relating to undercounted hours, see Fingerlakes

Chiropractic, P.C.v Maggio, 703 N.Y.S.2d 632, 634 (4th Dep't 2000), and (2) the fact that

plaintiff's wage-and-hour claims were only partially successful is relevant, see Farrar v. Hobby,

506 U.S. 103, 114 (1992) (stating that "'the most critical factor' in determining the

reasonableness of a fee award 'is the degree of success obtained'" (quoting Hensley v. Eckerhart,

461 U.S. 424, 436 (1983))).

---

[5] Section 198(1-a) also mandates an additional award of liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  Here, the underpayment was in error but not in bad faith, and I do not award liquidated damages.

**CONCLUSION**

The court notes that, by all accounts, Ms. Strohl was devoted to her job and to her students. It is beyond question that she was a dedicated worker who lavished attention and effort on the children under her care. Nevertheless, the facts in the case do not as a legal matter establish liability for defendants under the FMLA or the NYCHRL.

Plaintiff Yajaira Strohl shall recover from defendant Brite Adventure Center, Inc. a/k/a Bright Beginnings Pre-School the amount of $607.00 plus attorney's fees and costs. Plaintiff is directed to submit a brief and supporting documentation, including contemporaneous time records, for her fees and costs request by September 17, 2010; opposition due October 15, 2010; reply due October 29, 2010.

Judgment shall be entered after the court has determined the amount of fees and costs.

IT IS SO ORDERED.

Dated: Brooklyn, New York
      August 13, 2010

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge
